UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
)
)
v. ) Criminal No. 05-30039-MAP
)
)
)
JULIO MARIN, )
　　　　　　Defendant )

## MEMORANDUM WITH REGARD TO THE GOVERNMENT'S MOTION FOR DETENTION
June 29, 2005

NEIMAN, U.S.M.J.

Julio Marin ("Defendant") has been named in an indictment dated June 9, 2005, charging him with four counts of distribution and possession with intent to distribute cocaine base in violation of 18 U.S.C. § 841. The Government has moved for detention pursuant to 18 U.S.C. § 3142(e) and (f), asserting that Defendant presents a risk of flight and a danger to the community. Hearings on the Government's motion were held on June 23 and 28, 2005, following which the court ordered that Defendant be detained in accord with the Pretrial Services Officer's recommendation. The court now memorializes its decision.

### I. Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, a defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of

conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

The Supreme Court has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). For this reason, a defendant may be detained only if the judicial officer finds by (1) *clear and convincing evidence*, that the defendant is a danger to the community, or (2) *a preponderance of the evidence*, that the defendant poses a risk of flight. See 18 U.S.C. § 3142(f); *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991); *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). Furthermore, the judicial officer "may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c).

The Bail Reform Act establishes a two-step procedure for making the determination that a defendant should be detained. First, the Government is entitled to move for detention when a defendant has been charged with an offense enumerated in the Act for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142(f)(1). Second, the judicial officer must determine whether any condition or

combination of conditions will adequately ensure the appearance of the defendant and the safety of the community against any danger posed by the defendant's pretrial release. See *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether "any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Government is aided by the statutory presumptions created by 18 U.S.C. § 3142(e). Where the offense charged is one of the offenses enumerated in section 3142(f)(1), a rebuttable presumption is created by section 3142(e), that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the defendant has been convicted of a federal offense that is described in section 3142(f) or an offense under state law that would have been described in section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense.

The Government may invoke the same rebuttable presumption if the judicial officer finds probable cause to believe that the defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed in (a) the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c).

In making the determination as to whether a defendant overcomes the statutory presumption of 18 U.S.C. § 3142(e), the judicial officer is compelled to consider the

following factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including --
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). The Government has invoked the rebuttable presumption in the instant case.

## II. Finding of Facts and Discussion of Whether Detention is Warranted

The court makes the following factual findings and conclusions of law.

### A. Nature of Offense: § 3142(g)(1)

As described, Defendant, a previously convicted felon, has been charged with the distribution and possession of cocaine base on four different occasions between May and December of 2004. The Government indicates that Defendant faces a mandatory minimum sentence of ten years and a guidelines sentence, if followed, of 30 years as a career offender.

### B. The Weight of the Evidence: § 3142(g)(2)

4

The case against Defendant is strong, based as it is on consensually monitored audio and videotapes and the active participation of cooperating witnesses.

### C. History and Characteristics of Defendant: § 3142(g)(3)(A)

Defendant is thirty years old and received his high school diploma in 1994. Other than times of incarceration, Defendant has lived in and around Springfield his entire life, where he presently resides with his parents. Although Defendant is single, he has two children with Nina Rivera and is expecting another child with Annette Garcia. Defendant also has five siblings who reside in the Springfield area.

Defendant reports that he takes care of his mother, Aida Perez, who suffers from dementia. He also reports that he previously worked for New England Farm Workers, Mercy Hospital, Ronald McDonald House and Royal Harvest.

Defendant has a significant criminal history as both a juvenile and adult. His record includes convictions for shoplifting, motor vehicle violations, possession and distribution of class A and B substances, possession of ammunition and a firearm, larceny of a motor vehicle, malicious destruction of property, assault and battery on a police officer, and resisting arrest.

### D. Probation Status of Defendant: § 3142(g)(3)(B)

It appears that the charged crimes were not committed while Defendant was on probationary or parole status.

### E. Whether Defendant Poses a Risk of Flight: § 3142(e)

In accord with the rebuttable presumption in the Government's favor, the court believes that Defendant poses a serious risk of flight given the lengthy sentence he faces.

### F. Whether Defendant Poses a Risk to the Community: § 3142(g)(4)

The Government asserts that Defendant, if released, will pose a danger to the community and that there are no conditions which would guard against that danger. The court agrees.

The circumstances surrounding the charges, particularly Defendant's apparent role as a local leader of the Latin Kings gang -- supported by testimony and documentary evidence provided to the court -- make clear that he poses a continuing danger to the community. In making this determination, the court relies, in large part, on the affidavit and testimony of Robert C. Lewis, an FBI agent for fifteen years. The evidence demonstrates Defendant's historic role in the Latin Kings as well as his ongoing participation in its criminal activities. And, Defendant's proffers to the contrary, there is no evidence that he ever renounced his membership in the gang.

Agent Lewis' affidavit recounts federal indictments of twenty-two members and associates of the Latin Kings in Boston. Certain of those defendants have pleaded guilty and have cooperated, providing an "insider's understanding of the inner workings of the state-wide leadership of the Massachusetts Regional Chapter of the Latin Kings and its relationship to the local chapter," including the "stronghold" of the Regional Chapter in Western Massachusetts, most particularly Springfield and Holyoke. The ongoing investigation has led to Defendant's current indictment as well as the indictment of more than twenty other Latin King members and associates. These defendants have been charged with a broad range of drug and weapons crimes. Agent Lewis' affidavit and testimony further describe the Latin Kings as a well-organized gang with a hierarchy designed to enforce the gang's criminal purposes.

Defendant, who is known as "Pote" is described, at least until recently, as a local "Crown Inca."

To be sure, Agent Lewis' direct, personal information is somewhat dated. But the other information he has sworn to and testified about has been gathered by current law enforcement investigators, in particular FBI Special Agent Mark S. Karengekis. *See United States v. Acevedo-Ramos*, 755 F.2d 203, 208 (1st Cir. 1985). That information shows Defendant to have employed or supplied several Latin Kings in the distribution of crack cocaine in the south end of Springfield. The information also shows that controlled purchases of crack cocaine were made from Defendant by two separate cooperating witnesses over an eight month period, the majority of which transactions were made from the residence he shares with his parents. Defendant is also referenced in drug distribution activities of other gang members.

Of course, even in cases where there is the potential for danger, there may still be strict conditions of release which can serve as a reasonable guard against that risk. *See Patriarca*, 948 F.2d at 794. Here, Defendant suggests, those conditions include posting automobiles owned by Ms. Garcia and two siblings, electronic monitoring, employment and other standard provisions. Unfortunately for Defendant's cause, the court does not agree that the suggested conditions can reasonably assure the safety of the community or that Defendant's will not flee. The court also has little doubt that Defendant has had a significant role in the Latin Kings, and there is no evidence that his gang activity has diminished.

Accordingly, Defendant is ordered detained.

IT IS SO ORDERED.

DATED: June 29, 2005

                                                  /s/ Kenneth P. Neiman
                                                  KENNETH P. NEIMAN
                                                  U.S. Magistrate Judge