UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Oral Argument Requested

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05CR30039-MAP |
| | ) | |
| JULIO MARIN | ) | |

## DEFENDANT'S MOTION FOR RECONSIDERATION AND FOR A STAY

Julio Marin hereby moves the Magistrate Judge to reconsider the court's order of

11/29/05, denying without prejudice Defendant's Motion to Compel Discovery Concerning

Experts, and upon reconsideration to allow defendant's motion to compel (Docket #37). Also,

defendant moves the court to stay the time period for filing an objection to the 11/29/05 order

and allow defendant ten (10) days after action on the instant motion in which to file objections, if

any, to the 11/29.05 order. In support of the motion for reconsideration, defendant states:[1]

1. The 11/29/05 order denying the motion to compel was based on the court's

determination that "the Government has met its obligations under Fed.R.Crim. P. 16(a)(1)(G) at

this time." The order also permitted the defendant "to renew his motion if and when transcripts

---

[1] The timing of defendant's request and motion for expert discovery was the subject of the government's opposition. Defendant replied to the timing issue in a reply. Docket No. 32. Since the Magistrate Judge allowed the filing of that reply and denied the motion to compel based on the merits of the issue, the timing question is not discussed further in this motion for reconsideration.

are provided.."[2]    Docket Entry: 11/29/0505.

2.  Because the Government has no obligation to provide transcripts, the order of 11/29/05 has the effect of a denial with prejudice, unless transcripts are provided.

3.  Even if the Government were to provide transcripts, the timing of production may prevent or interfere with defendant's opportunity to effectively use such information as potentially may become available on a subsequent motion to compel.

4.  The information sought by defendant is needed now for four reasons:

> A.  For use by defense counsel in consulting with the defendant tor 1) evaluate the strength of the government's case and assist defendant in considering whether a plea or a trial is appropriate, and 2) if there is a trial, to better allow the defendant assist counsel prepare for trial with respect to the expected opinion testimony of government experts, and 3) to better allow counsel to assist the defendant prepare to testify in his own defense;
>
> B.  For use by defense counsel in deciding whether to hire consulting experts who may assist counsel in preparing to cross-examine government experts.
>
> C.  For use by defense counsel 1) in deciding whether and who to attempt to hire as defense experts to testify at trial or at a <u>Daubert/Kumho Tire</u> hearing, and 2) in order to focus the work of any defense experts on what

---

[2]    The government did not raise the fact that transcripts were not prepared as an objection to providing further discovery at this time.    Indeed, it should be noted that Government's Nov. 15 disclosure does not limit its expected expert testimony about terms used in conversations with the defendant to terms used in *recorded* conversations.

the government's experts are expected to say, rather requesting that they review the entire 20 plus hours of discovery and focus on everything concerning the operation of illegal drug businesses and on every possible use of code words in English and Spanish.   Also, nothing in the government's discovery response limits the subject of its expected testimony to terms used by the defendant or CW in *recorded* conversations.   Therefore, even if all 20 plus hours of recorded materials were intelligible (which they are not) and understood, without more discovery, defendant has no conceivable way of knowing even the set of terms which might be the subject of the government's expert testimony.

D.  For use by defense counsel in preparing motions in limine to exclude government's proffered expert testimony to the extent it appears that the testimony would be an opinion as to what the defendant meant and not properly the subject of opinion testimony.

5.   In response to defendant's request for expert discovery, the government filed a letter dated November 15, 2005.  (Docket # No.29.)

6.  The information provided by the government falls into two categories: the first category concerns the drug analyses in this case and the opinion that the substances tested were crack cocaine base; and the second category concerns the nature of illegal drug businesses and code words used in the business and that were used in recorded conversations with the defendant. As to this second category, the government discloses that its experts will be members of the FBI Gang Task Force (GTF) (including but not limited to six persons identified by name) and they

are expected to opine a) "about terms used during conversations between the defendant and the cooperating witness," b) about "the amounts of money discussed," and 3) "about terms, prices and methods of distribution in illegal drug business based upon their training and experience investigating narcotic offenses," Nov. 15 Letter, pg 2.

7.  It is the adequacy of the second category of information (1,2,&3 in the above paragraph) which defendant challenges and which was the subject of his motion to compel..

8.  The following is the sum total of what the government has produced with regard to this category of expert opinion:

> Further, I presently intend to call members of the FBI task Gang task Force (GTE), including but not limited to FBI SA Mark Karangekis, FBI SA Andrew Ltowitz, FBI SA Rob Lewis, GTF Agent Frank Ott, GTF Agent Steve Maragoudakis, and GTF Agent James Mazza to testify at trial.  I expect they will testify about terms, prices, and methods of distribution in the illegal drug business based upon their training and experience investigating narcotics offenses.

> The government intends to ask the GTF agents about terms used during the conversations between the defendant and the cooperating witness (CW) regarding drug quantities.  The government will also ask the GTF agents about the references to amounts of money discussed during the conversations and expects that they will testify that those amounts are consistent with prices in this area at the relevant time.

> The GTF agents will also testify regarding the operation of a drug business. For example, they will testify that drug businesses use beepers, cellular phones, code words or phrases, generally accept cash only and involve several levels of distributors in a hierarchy.   They will also testify that drug distributors will not deal directly with unknown individuals but rather will only deal with people they know or use other members of the conspiracy to insulate themselves from detection by law enforcement.

> The GTF agents will also testify about the terms, prices and methods of distribution in the illegal drug business. [Further, they will testify that crack or crack cocaine is the street term for cocaine base and that cocaine base in the form of crack cocaine is made by cooking cocaine and at least one other dilutant, usually baking soda. They will testify that crack  is also called rock and hard.

They will testify that all cocaine base in this case is in the form of crack cocaine. They will testify that cocaine is also called raw, soft or powder. They will testify that a brick is a kilogram of cocaine. They will testify that cocaine and crack cocaine are sold in quantities which are sometimes referred to in metric weight and sometimes ounces. They will testify that one ounce is approximately 28 grams and that an "eighth" or 8 ball" refers to one-eighth of an ounce which is approximately 3.5 grams.] (brackets added.)[3]   This is not a comprehensive list of the testimony but a summary of the expected testimony. The GTF agents will be testifying based on their experience in investigating numerous drug cases.

See, Government Letter dated Nov. 15, Docket # 29.

9. As the foregoing makes clear, the government is not limiting its experts' expected testimony to definition of the specific terms actually identified in its discovery letter. The list of terms provided in discovery is "not comprehensive," but rather exemplary of the type of terms about which the government experts may testify. The following sentences in the Governments Nov. 15 Letter are particularly vague and troublesome: "I expect they will testify about terms, prices, and methods of distribution in the illegal drug business based upon their training and experience investigating narcotics offenses." .... "The GTF agents will also testify about the terms, prices and methods of distribution in the illegal drug business." .... "The government intends to ask the GTF agents about terms used during the conversations between the defendant and the cooperating witness (CW) regarding drug quantities."   Unless, these sentence are construed to be strictly limited by the examples given (which construction the government expressly avoids), all the government has provided in discovery  is the subject matter about

_____

[3]   The bracketted section contains a fair summary of expected expert testimony.  It is precisely the level of specificity which defendant seeks as to all expected testimony.  But, in addition to this level of specificity, defendant is also entitled to meaningful discovery of the bases and reasons for the expected opinions.  Merely saying that the opinions are based on experience investigating drug cases (as the government says) provides neither the bases or reasons for expert opinions; it provides merely the circumstance in which the witnesses may have gained relevant, specialized knowledge.

which expert testimony is expected.

10.  Without additional discovery, defendant is left in the following position: The government may call GTF agents at trial who will testify as to the meaning of certain, not-previously-identified words used during the conversations between the defendant and the CW. At trial, the defendant and jury will hear that these previously unspecified words indicate, according to government experts, that what was going on was an illegal drug transaction, what the drug was, what the quantity was, what the cost was and that the amount was consistent with "prices in the area at the time." The words which are explained by government experts may go to the very heart of the claim against defendant, that is, to the elements of the crimes charged: that a transaction took place or was planned, that it involved illegal drugs, that the drug was crack, the amounts involved, and the defendant's role.  In this circumstance, without additional expert discovery, defense counsel will be severely hampered to the point of being ineffective in his efforts to a) confer meaningfully with the defendant about the case, b) prepare cross-examination the government experts, c) present appropriate motions in limine to challenge the proffered expert testimony and d) arrange for appropriate experts to testify on behalf the defendant.


LEGAL CONTEXT

A.  Specificity Required under Rule 16:

Fed. R. Crim. P. 16(a)(1)(G) requires the government to provide:

> a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

The Rule is

> intended to minimize surprise that often results from unexpected
> expert testimony, reduce the need for continuances, and to provide
> the opponent with a fair opportunity to test the merit of the expert's
> testimony through focused cross-examination.

Advisory Committee Notes to 1993 Amendment to Fed. R. Crim. P. 16.

The Second Circuit has helped clarify the obligation for expert discovery as follows:

> Rule 16 provides markedly broader discovery with respect to expert witnesses for
> the government than is required for other types of information from the
> government. Rule 16 provides that the defense is entitled to discovery of a written
> summary of expert testimony that the government intends to use in its case-in-
> chief. Fed.R.Crim.P. 16(a)(1)(G).   That summary "must describe the witness's
> opinions, the bases and the reasons for those opinions, and the witness's
> qualifications." *Id.* This disclosure requirement creates an incentive for the
> government to limit its use of experts to proper subject matters of expert
> testimony, lest broader expert testimony require broader pre-trial disclosure.

United States v. Dukagjini 326 F.3d 45, 56 (2nd Cir. 2002)

Previously, this court has found the government's expert discovery to be inadequate

where the government identified a specific government agent as an individual who would testify

a) about terms, prices and methods of distribution based on his training and experience

investigating narcotic offenses, b) about terms used during the conversations with defendant, and

about references to the money being consistent with prices in the area at the time, and c) about

the drug businesses use beepers, cellular phones, code words or phrases, generally accept cash

only and involve several levels of distributors in a hierarchy, and where the government claimed

that this was not comprehensive list of the testimony, but rather a summary of the expected

testimony and that the Agent will be testifying based upon his training as a DEA Agent and his

experience investigating numerous drug cases. United States v. Capleton, 199 F.R.D. 25, 28 (D.

Mass. 2001).

In Capleton, the court allowed defendant's motion to compel and ordered the government to comply with Rule 16(a)(1) and "at a minimum" to provide defendant the following additional information:[4][5] a) a more complete summary of the opinions the Agent will offer; b) copies of any summaries prepared by the Agent as a result of his analysis of the case; c) underlying data relied upon by the Agent when forming his opinion; d) the Agent's resume; and e) a list of the cases in which the Agent has previously testified. Id. at 28. In Capleton, it seems that the court ordered the government to comply without necessarily waiting for transcripts to be prepared. Id. at 26.

In United States v. Duvall, 272 F.3d 825 (7th Cir. 2001), cert. den. 536 U.S. 950 (2002), the government's expert disclosure was inadequate where it provided "a list of general subject matters to be covered by its expert, but did not identify what opinion the expert would offer on those subjects:

> For example, the statement that Erk [the government's expert] would testify concerning "the manner in which methamphetamine is distributed" does not in any way identify the particular opinion that Erk offered at trial-- for example, that methamphetamine is typically divided into small packages for distribution. Similarly, the statement that Erk would testify "concerning amounts of methamphetamine an individual might have for distribution, as opposed to personal use," does not identify what amount, according to Erk, would point to intended sales rather than use.

Duvall, 272 F.3d at 828, 829.[6]

---

[4]. The prosecutor in Capleton was the apparently same as the prosecutor in this case.

[5]  The Magistrate Judge's order was appealed to the district court which denied the appeal. See Docket.

[6]  In Duvall, inadequate expert discovery was deemed harmless in all the circumstances.

B:  Reasons Specificity under Rule 16 is Necessary.

1. Specificity as to exactly what the "opinion" will be is necessary to avoid an expert witness testifying as to what he/she believes the defendant is saying where defendant's words are relatively clear on their face.   United Sates v. Garcia, 291 F. 3d 127, 141 (2nd cir. 2002)(reversing where witness was improperly allowed to interpret unambiguous statements.) See, United States v. Gaines, 170 F. 3d 72, 77 (1st Cir. 1999)(allowing witness to interpret recorded statement where witness was able on basis of first hand perception able to explain references which related to witness.)

2.  Specifying as to the basis of the expert's opinion is necessary in order avoid an expert witness relying on hearsay for his interpretation of "code" words allegedly used in conversation with the defendant.  For a pre-Crawford case, see, United States v. Dukagjini, 326 F.3d 45, 59 (2nd Cir. 2002)(where expert merely repeats hearsay, the government circumvents the rules prohibiting hearsay).

3.  Specifying the basis is also necessary to avoid a violation of Crawford v. Washington, 124 S. Ct. 1354, 1367 (2004).  After Crawford, expert testimony based on information from a declarant who was neither unavailable nor subject to cross-examination may no longer be permitted.  See, "Testimonial Hearsay as the Basis for Expert Opinion: The Intersection of the Confrontation Clause and Federal Rule of Evidence 703 after Crawford v. Washington." 55 Hastings L.J. 1539 (June 2004).  In an unpublished opinion, the Eleventh Circuit held that an agent's testimony about drug value violated the Confrontation Clause under Crawford because the expert's opinion was based on statements of a person who was not unavailable and not

subject to cross examination.   United States v. Buonsignore, No. 04-13098 (11th Cir, May 13, 2005).

CONCLUSION

To date, general discovery in this case has revealed two types of evidence which may directly inculpate the defendant: 1) potential testimony of highly compensated (and therefore arguably impeachable) Cooperating Witnesses who allegedly made buys of crack from the defendant[7], and 2) government expert witnesses who are expected to testify about the real meaning of terms used by defendant and the CW and about the how the illegal drug business works.

The expert discovery response by the government is grossly inadequate.   Although the discovery provided a few examples and instances of what its experts might testify to, it provides little more that topics or subject matter of expected testimony and expressly reserves the right to use other, undisclosed opinions at trial.   It is not the "summary of testimony" required by the rule, but merely a disclosure of the subject areas.   And no meaningful information is provided about the experts' qualifications or about the bases or reasons for their opinions.

The Government's response to the motion to compel provided no substantive (as opposed to procedural) reason for refusing to provide additional discovery. Without citing any authority, the government merely argued that defendant has no right to more.  That argument to the contrary, the discovery provided in this case is as lacking as the discovery previously found to be

---

[7]  There is also the drugs themselves.  But, it appears that the drugs were passed to government officials by the CWs.

inadequate in <u>Duvall</u> and <u>Capelton</u>, supra.. As in those cases, the government here may have provided some examples and instances of what its witnesses opinions might be, but those particulars are exemplary in function, not exclusive. And as in the cases cited, the government here expressly reserved the right to have its unidentified experts testify about unspecified opinions. Clearly, the government's disclosure has not met the standard articulated by the Second Circuit in <u>United States v. Dukagjini</u>, supra.

The absence of transcripts may make it more difficult for the government to determine exactly what expert opinion testimony concerning recorded conversations it will seek to develop and use at trial. But, the government is not required to produce transcripts (L.R.116.4 B)(4), the lack of transcripts is entirely within the government's control, and its absence harms the defendant far more than the government. In any event, the government is not required to have experts at trial. But if it chooses to do so, it must comply with Rule 16, whether or not transcripts are prepared.

Even without regard to constitutional considerations, the defendant is granted certain rights for expert discovery under Rule 16, and the defendant relies on the court to enforce those rights. But in these circumstances, as stated above, failure of the government to provide meaningful expert discovery will have constitutional implications: it will severely hamper defense counsel's ability job to assist the defendant, have the defendant assist him[8], obtain and utilize defense experts, and prepare pre-trial challenges and cross-examine at trial.

---

[8] If defense counsel knew in advance what terms used in conversation supposedly meant what (according to government experts), counsel could discuss this with the defendant.

RELIEF REQUESTED:

1) Defendant requests that the court reconsider its decision of 11/29/05, and upon reconsideration, allow defendant's motion to compel and order the government to fully comply with Rule 16(a)(1(G).   The compliance by the government should include:[9]

> a)  a complete summary of the opinions each expert will offer, including identification of each term or phrase contained in discovery that the Government expects its expert will explain, and the expert's opinion as to what that term or phrase means;
>
> b) the basis and reasons for each expert opinion.
>
> c) the qualifications of that expert for the opinion proffered;
>
> d) copies of any summaries prepared by the expert as a result of his analysis of the case;
>
> e)  underlying data relied upon by the expert when forming his opinion;
>
> f)  the expert's resume.
>
> g)  a list of the cases in which the expert has previously testified.

2)  If, upon reconsideration, the court decides not to order further compliance with expert discovery under Rule 16, defendant requests that the court enter an order limiting the opinions of government's expert witnesses at trial to those specific, concrete examples which have been provided in its November 15 letter, and not allow testimony about code terms which have not been specifically identified in the November 15 letter.

---

[9]  Paragraphs a - c are derived from Rule 16(a)(1)(G) and d - g from the Capleton case. 199 F.R.D. 25, 28 (D. Mass. 2001).

Page 12 of  13

3)  Finally, the defendant asks the court to stay the time for filing an objection of the 11/29/05 order and allow defendant ten (10) days after action on the instant motion to file any objections to the 11.29/05 order.

## ORAL ARGUMENT REQUESTED

Defendant requests oral argument on this motion.

Respectfully Submitted,
Julio Marin, By his attorney,

December 8, 2005

Myles Jacobson
Jacobson & Fellows
90 Conz Street
P.O. Box 597
Northampton, MA 01061
Tel: (413) 584-8181
BBO #249600

## CERTIFICATE OF SERVICE

I, Myles Jacobson, do hereby certify that on December 8, 2005, I served a copy of the foregoing document in hand to the office of the attorney of record: Todd E. Newhouse, Assistant U.S. Attorney, Office of the United States District Attorney, District of Massachusetts, Federal Building and Courthouse, 1550 Main Street, Room 310, Springfield, MA 01103.

Myles Jacobson